IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CANDACE IRON HAWK** and **ROBERT VAN PELT**,<br><br>      Plaintiffs,<br><br>      v.<br><br>**BANK2** and **DOVENMUEHLE MORTGAGE, INC.**,<br><br>      Defendants. | Case No. 3:15-cv-1374-PK<br><br>**OPINION AND ORDER** |

**Michael H. Simon, District Judge.**

United States Magistrate Judge Paul Papak issued Findings and Recommendations in this case on April 11, 2016. Dkt. 105. Judge Papak recommended that the Court grant Defendants' request for judicial notice, deny Defendants' motion to strike, grant Plaintiffs' motion for partial summary judgment, and declare that: (1) Bank2 is not the beneficiary of Plaintiffs' Trust Deed and mortgage as a defined under Oregon law; and (2) Defendants may not lawfully proceed under Oregon's Trust Deed Act ("OTDA") with a non-judicial foreclosure of Plaintiffs' residence.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court

PAGE 1 – OPINION AND ORDER

shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review de novo magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

No party objects to Judge Papak's recommendations that Defendants' first request for judicial notice (Dkt. 99) be granted and that Defendants' motion to strike (Dkt. 89) be denied. Accordingly, the Court reviews those portions of Judge Papak's Findings and Recommendations for clear error. Finding no clear error, the Court adopts those portions of Judge Papak's Findings and Recommendations.

Defendants, however, filed timely objections to other portions of the Findings and Recommendations (Dkt. 108), and Plaintiffs responded (Dkt. 110). Defendants object to Judge Papak's finding that neither Bank2 nor MERS is the "beneficiary" of Plaintiffs' Trust Deed under Oregon law. Defendants also object to Judge Papak's recommendations that the Court: (1) grant Plaintiffs' motion for partial summary judgment; (2) declare that Bank2 is not a

PAGE 2 – OPINION AND ORDER

beneficiary of Plaintiffs' Trust Deed; and (3) declare that Defendants may not lawfully conduct a non-judicial foreclosure of Plaintiffs' residence. The Court has considered these issues *de novo*, and adopts Judge Papak's Findings and Recommendations as clarified in this Opinion and Order.[1]

After Judge Papak issued his Findings and Recommendations, Defendants filed their third[2] request for judicial notice. Dkt. 109. Defendants seek judicial notice of a portion of the November 20, 2009 Interim Final Rule in relation to Truth in Lending, Regulation Z, 12 C.F.R. Part 226, as published in the Federal Register, and a brief filed by Government National Mortgage Association ("GNMA" or "Ginnie Mae") in Case No. 1:12-cv-0603, United States District Court for the District of Rhode Island. Plaintiffs do not oppose Defendants' third request for judicial notice, and the Court finds the relevant documents are appropriate for judicial notice under Federal Rule of Evidence 201(b). Accordingly, Defendants' third request for judicial notice (Dkt. 109) is granted.

## DISCUSSION

Defendants argue in their objections that Judge Papak misunderstands the GNMA mortgage-backed securities ("MBS") program. Based on this supposed misunderstanding, Defendants argue, Judge Papak erroneously concluded that Bank2 was not the *owner* of

---

[1] Although Defendants requested oral argument on their objections to Judge Papak's Findings and Recommendations, the Court does not believe that oral argument is needed or will be helpful.

[2] Shortly before Judge Papak issued his Findings and Recommendations (Dkt. 105) on Plaintiffs' Motion for Partial Summary Judgment (Dkt. 66), Defendants filed their own Motion for Summary Judgment (Dkt. 102). In connection with that motion, Defendants filed their second request for judicial notice. Dkt. 104. In connection with Defendants' objections to Judge Papak's Findings and Recommendations (Dkt. 108), Defendants filed their third request for judicial notice (Dkt. 109). Judge Papak has stayed his decision on Defendants' Motion for Summary Judgment (Dkt. 102) and Defendants' second request for judicial notice (Dkt. 104). Dkt. 127.

Plaintiffs' loan after Bank2 *sold* Plaintiffs' loan to GNMA at the time Bank2 securitized Plaintiffs' loan under GNMA's MBS program. Defendants, however, misunderstand Judge Papak's Findings and Recommendations.

In his conclusion, Judge Papak did not hold that Bank2 is not the *owner* of Plaintiffs' loan. What Judge Papak evaluated under Oregon law is whether Bank2 was the *beneficiary* of Plaintiffs' loan.[3] Judge Papak unambiguously held that Bank2 was not the *beneficiary* of Plaintiffs' loan under Oregon law. Dkt. 105 at 28 (recommending that the Court declare "that defendant Bank2 is not the beneficiary of plaintiffs' mortgage loan").

**A. Distinguishing Between the Owner and the Beneficiary of a Loan or Trust Deed**

The distinction between whether Bank2 is the owner or the beneficiary of Plaintiffs' loan or Trust Deed is critical in this case because under the OTDA, only the *beneficiary* has the power to foreclose a trust deed in a nonjudicial foreclosure proceeding. *See Brandrup v. ReconTrust Co.*, 353 Or. 668, 675, (2013); *Niday v. GMAC Mortg., LLC*, 353 Or. 648, 658, 664 (2013). In *Niday*, the Oregon Supreme Court explained that who may foreclose on a note when the owner is separate from the beneficiary was not at issue in that case, and thus was not resolved in that decision. The Oregon Supreme Court, however, added that "[m]ost courts" that have considered

---

[3] *See* F&R, Dkt. 105 at 17 (noting that Plaintiffs' seek summary judgment and a declaration that "Bank2 is not the beneficiary of plaintiffs' mortgage loan"); 19 (noting that Defendants could only conduct a nonjudicial foreclosure of Plaintiffs' residence to the extent Bank2 was the beneficiary); 20 (evaluating "whether Bank2 could be the beneficiary of the loan"); 23 (evaluating whether MERS could be the "beneficiary" under Oregon law); 24 (evaluating "whether Bank2 remained the beneficiary of the loan at all times continuously from the date the loan issued"); 26 (finding that Defendants' evidence "has no tendency whatsoever to establish that Bank2 was the beneficiary" of the loan after it securitized the loan); 28 (finding that Defendants' evidence is "insufficient to create any material question of fact as to whether Bank2 could have been the beneficiary of the loan at the time it purported to appoint Clear Recon Corp. as the successor trustee (or at any other material time).")

PAGE 4 – OPINION AND ORDER

this issue have found that it is the status as the "party entitled to enforce the note" and not ownership status that confers the right to foreclose. *Niday*, 353 Or. at 665 n.8.[4]

Defendants cite to Judge Papak's discussions regarding two forms, HUD-11711B and GinnieNet Form 11705, as evidencing that Judge Papak erroneously concluded that Bank2 *sold* Plaintiffs' mortgage to GNMA. As Judge Papak noted, in submitting form HUD-11711B, Bank2 certified and agreed that "upon the release (delivery) of securities backed by the pool or loan package, only Ginnie Mae will have any ownership interest in and to the pooled mortgages." Dkt. 67-1 at 17. Further, in submitting form 11705, Bank2 agreed that effective as of the date of issuance of the MBS, Bank2 "transfers, assigns, sets over and otherwise conveys to Ginnie Mae all of the Issuer's right, title, and interest in and to the pooled mortgages . . . ."[5] Dkt. 67-1 at 18.

To the extent Judge Papak's discussion regarding these forms could be construed as opining that upon securitization Bank2 sold all of its *ownership* rights in Plaintiffs' loan to GNMA, the Court clarifies that it does *not* reach such a conclusion. The statutory, regulatory, and contractual relationship between GNMA and Bank2 demonstrates that the assignment to GNMA was only provided as *security* for GNMA's guaranty and did not serve immediately to

---

[4] The entirety of *Niday's* footnote 8 reads: "The parties have not addressed the identity of the beneficiary if, as we conclude, it is not MERS. That issue is by no means academic. If a note is negotiable, the 'party entitled to enforce the note' (the 'PETE') under ORS 73.0301 may not be the same person as the owner of the note, that is, the party entitled to the economic benefits of the note. Because a mortgage or trust deed follows the note that it secures, *United States Nat. Bank v. Holton*, 99 Or. 419, 428–29 (1921), the potential separation of ownership and PETE status raises the question of whether a lender's successor—that is, the beneficiary—must be the owner, the PETE, or both? Most courts that have thus far addressed the issue have concluded that PETE status, not ownership, confers the right to foreclose. *See, e.g., Edelstein v. N.Y. Mellon*, 286 P.3d 249, 257 (2012). Because the parties have not addressed the issue, we do not discuss it further here.").

[5] The "Issuer" is the entity who creates the pools of mortgages that the Issuer then markets as securities. Dkt. 78 at 12. The Issuer must be approved by GNMA, must enter into an agreement with GNMA, and will be responsible for servicing the pooled mortgages. *Id.*

effect a transfer all of Bank2's ownership interest, and concomitant obligations, to GNMA.[6] In their objections, Defendants make this point, and the Court agrees.

As Defendants correctly describe, the general business model of GNMA is not to buy loans, but to guarantee securities issued by private lending institutions that are secured by pooled mortgage loans.[7] Upon securitization, the relevant documents, including the original loan

---

[6] *See* Dkt. 78 at 12 ("Except for Ginnie Mae's guaranty to security holders and otherwise as expressly provided in the Guaranty Agreements or herein, Ginnie Mae assumes no duty or liability to any person or entity. . . . The Issuer markets securities guaranteed by Ginnie Mae that are collateralized by these pools or loan packages."); Dkt. 78 at 16 (explaining that upon securitization, the Issuer must either retain responsibility for, among other things, servicing the securitized loans or, upon GNMA's approval, transfer Issuer responsibilities to another GNMA approved Issuer); *cf. Bluebonnet Warehouse Co-op. v. Bankers Trust Co.*, 89 F.3d 292, 297 (6th Cir. 1996) (noting that "[a]n assignment as security . . . 'does not ordinarily delegate performance to the secured party, and the secured party does not assume the assignor's duties' . . . . The very purpose of the assignment—to perfect a security interest—goes against such a presumption." (quoting Restatement (Second) of Contracts § 328(1) comment b) (citation omitted)); *In re Wiersma*, 283 B.R. 294, 305 (Bankr. D. Idaho 2002), *aff'd*, 324 B.R. 92 (B.A.P. 9th Cir. 2005), *aff'd in part, rev'd in part on other grounds*, 483 F.3d 933 (9th Cir. 2007), and *aff'd in part*, 227 F. App'x 603 (9th Cir. 2007) ("An absolute assignment effects a transfer of all an owner's interest in property. In contrast, a security interest is an interest . . . which secures payment or performance of an obligation. While distinguishing between the two types of transactions is sometimes difficult, courts often look past the express language of the documents evidencing a transaction and treat purported assignments as security agreements to give effect to the true nature of a transaction. . . . Debtors signed a document entitled 'Assignment,' which may suggest the document was intended to effect an absolute conveyance . . . . Regardless of the form of this instrument, the substance of the relevant documents indicates that both Debtors and O.H. Kruse intended to create a security interest rather than an assignment." (citations omitted)).

[7] *See, e.g.*, 12 U.S.C. § 1721(g) (authorizing GNMA to "guarantee the timely payment of principal of and interest on" pooled mortgages); Dkt. 52 at 3 (stating that GNMA's "strategy is to guarantee a simple pass-through security to investors rather than buy loans and issue its own securities"); Dkt. 77 at 27 (Form HUD-11702, stating that an Issuer of MBS must "enter into contracts with Ginnie Mae for the latter's guaranty of mortgage-backed securities issued in accordance with the terms and conditions of commitments to guarantee"); Dkt. 78 at 5 (noting that GNMA "guarantees securities that are backed by pools of mortgages and issued by mortgage lenders (Issuers) approved by Ginnie Mae. Security holders receive a 'pass through' of the principal and interest payments on a pool of mortgages."); Dkt. 99 at 18 ("Our [GNMA's] risk model requires lenders to take financial responsibility for mortgage defaults before the government guaranty would ever be called upon."); Dkt. 99 at 19 ("Importantly, we are unlike Fannie Mae and Freddie Mac. Rather than acquiring, holding and managing credit risk and

PAGE 6 – OPINION AND ORDER

documents, are not held by GNMA but instead are held by a third-party document custodian.[8] If a homeowner defaults on a mortgage that is part of a GNMA MBS, the Issuer continues to pay the principal and interest payments to the investors who own shares in the MBS.[9] GNMA does not get involved simply because a *homeowner* has defaulted on paying a mortgage. If, however, an *Issuer*, such as Bank2, for example, were to fail to make the payments that it owes to security holders, then GNMA may be called upon to make the payments owed to the security holders in accordance with its guaranty.[10]

An Issuer's failure to make the necessary payments owed to security holders, or other failure to discharge its responsibilities owed under its agreements with GNMA, constitutes a default. This is the point at which the transfers and assignments contingently reflected in HUD-11711B and GNMA 11705 become effective, operational, and are enforced so that GNMA may then more easily extinguish "an Issuer's rights in its Ginnie Mae portfolio." Dkt. 78 at 45;

---

interest-rate risk, as these entities do, in Ginnie Mae's business model almost all risk is borne by private market participants, enabling them to reap the corresponding profit (or incur the loss).").

[8] *See, e.g.*, Dkt. 77 at 24-25 (Form HUD-11715, Master Custodial Agreement, establishing what documents must be provided to the records custodian and the records custodian's duties); Dkt. 78 at 13 (defining "Document Custodian" and noting the document custodian reviews the loan documents submitted by the Issuer and "holds the loan documents in safekeeping").

[9] *See, e.g.*, Dkt. 78 at 5 ("If a borrower fails to make a timely payment on a mortgage, the Issuer must use its own funds to ensure that the security holders receive timely payment."); 10 ("In the case of delinquent mortgages, the Issuer is required to make advances from its own funds, if necessary, in order to ensure that required interest and principal are paid to security holders); 40-44 ("Mortgage Delinquency and Default" chapter, explaining the obligations of Issuers upon a homeowner's default).

[10] *See, e.g.*, Dkt. 78 at 5 ("if an Issuer fails to ensure that the funds necessary to make timely payment are available or otherwise defaults in the discharge of its responsibilities, Ginnie Mae, in accordance with its guaranty, will make payments to security holders."); Dkt. 99 at 79 (explaining that GNMA's debt obligations only arise after an Issuer defaults and GNMA has to "step into the role of an issuer," service loans, and purchase loans out of the pool for which homeowners have defaulted and then foreclose those loans).

PAGE 7 – OPINION AND ORDER

*see also Poindexter v. Nat'l Mortgage Co.*, 1995 WL 242287, at *1 (N.D. Ill. Apr. 24, 1995) ("In return for the guarantee, which makes the issues highly marketable, the issuer pays GNMA a fee and gives GNMA a security interest in the underlying mortgages. 12 USC § 1721(g)(1); Nelson and Whitman, 2 REAL ESTATE FINANCE LAW § 11.3 at 75. This takes the form of an assignment, executed by the issuer in GNMA's favor, but it is *enforced only if the issuer defaults on its obligation* to holders of the mortgage-backed securities. Until such default, a bank or trust company usually holds the mortgages as custodian. Nelson and Whitman, 2 REAL ESTATE FINANCE LAW § 11.3 at 75." (emphasis added)).

    As correctly pointed out by Bank2 in its objections, this interpretation of how GNMA operates comports with the statutory authority granted to GNMA, which provides that "before or after any default" GNMA may provide by contract with an issuer "for the extinguishment, *upon default by the issuer*, of any redemption, equitable, legal, or other right, title, or interest of the issuer in any mortgage" and that "in the event of a default and pursuant otherwise to the terms of the contract, the mortgages that constitute such trust or pool shall become the absolute property of [GNMA] . . . ." 12 U.S.C. § 1721(g)(1) (emphasis added); *see also* Dkt. 78 at 9 ("Ginnie Mae is authorized by section 306(g) of the National Housing Act [codified at 12 U.S.C. § 1721(g)] to guarantee the timely payment of principal and interest on securities that are based on and backed by trusts or pools composed of mortgages . . . ."). The guaranty agreement between GNMA and Issuers establishes the "[p]rocedures for the declaration of a default, termination of Issuer status, and extinguishment of an Issuer's right, title, and interest in the pooled mortgages . . . ." Dkt. 78 at 45.

    Upon default by an Issuer, GNMA has the sole discretion to elect its remedies. Dkt. 78 at 46. If GNMA elects to extinguish the Issuer's right, title, and interest, then and only then all of

PAGE 8 – OPINION AND ORDER

the Issuer's right, title, and interest in the mortgages, including the Issuer's right to service the mortgages, "are forfeited and cease upon extinguishment by Ginnie Mae." Dkt. 78 at 47. Further, only upon default of the Issuer may GNMA demand from the records custodian delivery of all loan documents. Dkt. 77 at 25.

**B. Determining Who Is the Beneficiary of the Loan or Trust Deed**

Concluding that Bank2 did not transfer its ownership rights in Plaintiffs' loan to GNMA upon securitization of the mortgages does not, however, answer the question of whether Bank2 is the *beneficiary* under the OTDA of Plaintiffs' loan, mortgage, or Trust Deed. Under the OTDA, the beneficiary is "the person with the right to repayment of the underlying obligation" and that person "also controls the foreclosure process." *Brandrup*, 353 Or. at 687.[11] Notably, the proceeds of any foreclosure "must be applied 'to the obligation secured by the trust deed'—that is, to satisfy the obligation that the borrower owes to the *beneficiary*." *Id.* at 677 (emphasis added).

When Bank2 securitized Plaintiffs' mortgage, Bank2 received a substantial payment for that loan. Further, after Bank2 securitized Plaintiffs' mortgage, Bank2 no longer was the person with the right to receive and retain Plaintiffs' payments on Plaintiffs' loan. Bank2 was required to pay the principal and interest payments to the security holders of the MBS, and Bank2 only was permitted to retain a small percentage of those payments as its fee for servicing Plaintiffs' loan.[12]

---

[11] In *Brandrup* and its companion case, *Niday*, the Oregon Supreme Court was not addressing mortgages that were part of an MBS, and thus discussed that the person with the right to repayment was the lender or its successors. But the gravamen of the Oregon Supreme Court's analysis regarding who is the beneficiary under the OTDA hinges on the right to receive the repayment. In the MBS context, that is not the lender or its successors; instead, it is the security holders.

[12] *See, e.g.*, Dkt. 77 at 27 (Form HUD-11702, in which Bank2 agrees to pay security holders of MBS the proceeds from collections from servicing the mortgages); Dkt. 77 at 29 (Form HUD-11709, the agreement for the principal and interest custodial account, in which

PAGE 9 – OPINION AND ORDER

Moreover, if Plaintiffs, or any other homeowner with mortgages in an MBS, paid any monies in addition to the regular, scheduled principal and interest payment, Bank2 was required to pay any and all such extra payments to the security holders of the MBS. Dkt. 78 at 34. Unscheduled proceeds that must be paid to the MBS investors include proceeds from any foreclosure. *Id.* If a property is foreclosed upon and the proceeds are insufficient to pay off the remaining principal balance of a securitized loan, the Issuer must pay from its own funds to the MBS investors an amount sufficient to pay in full the remaining principal balance of the foreclosed loan. *Id.* at 36.

Thus, upon securitization, Bank2 was no longer the entity that had the right to repayment from Plaintiffs. Bank2 has already received its repayment, namely, the up-front payment received at the time of securitization. The ongoing repayments from Plaintiffs inure only to the benefit of the MBS security holders, except for Bank2's servicing fee. Bank2 is only the servicer of the loan and so may physically collect Plaintiffs' payments (or, as was the case here, arrange with a subcontractor to service the loan and collect Plaintiffs' payments), but any collected payments must be deposited into a custodial account for the benefit of, and used to pay, the security holders. Bank2 was only entitled to collect its servicing fee.

The fact that Bank2 is not the beneficiary of Plaintiffs' loan upon securitization is further confirmed by the fact that any unscheduled payments, including any foreclosure proceeds, must go to the MBS investors and not to Bank2. Thus, as Judge Papak correctly found, Bank2 is not

---

principal and interest collections shall be deposited and from which no funds may be used to offset any monies advanced by Bank2); Dkt. 78 at 5 (noting that the MBS system creates a "pass-through" of the principal and interest payments, "less amounts required to cover servicing costs"); 28-39 ("Payments to Security Holders" chapter, explaining the obligations of the Issuer to pay into the relevant custodial accounts all monies paid by homeowners, minus only Bank2's servicing fee and GNMA's guaranty fee).

PAGE 10 – OPINION AND ORDER

the beneficiary of Plaintiffs' loan under Oregon law for purposes of conducting a nonjudicial foreclosure. *See Bandrup*, 353 Or. at 677, 687.

Bank2 also cannot claim beneficiary status arising from the purported assignment from MERS. This is because at the time MERS executed the assignment, it was not the beneficiary. As discussed at length by the Oregon Supreme Court, MERS is not an appropriate beneficiary under the OTDA. *See Brandrup*, 353 Or. at 682-93, 703-05. Although Bank2 argues in its objection that MERS acted as an agent of Bank2 when it executed the assignment, this argument fails for two reasons. First, MERS did not purport to assign its rights as an agent of Bank2, but purported to assign its own rights as the beneficiary, which under Oregon law it was not. *See id.* at 707 (noting that when MERS executed the assignment it did so as itself and not as the agent of the beneficiary and thus "[b]ecause MERS does not qualify as the beneficiary, an assignment in such capacity is invalid"). Second, at the time MERS executed its assignment, Bank2 was not the beneficiary. Thus, even if MERS was acting as the agent of Bank2, it was not acting as the agent of the beneficiary and thus could not assign the interests of the beneficiary.[13]

## C.  Determining Who, If Anyone, Is the Agent of the Beneficiary

The Court's finding that upon securitization, Bank2 lost its status as the beneficiary under the OTDA does not preclude judicial or nonjudicial foreclosure on Plaintiffs' loan. As the owner of the loan, Bank2 may be able to pursue a judicial foreclosure. Further, Bank2 even may pursue a nonjudicial foreclosure if Bank2 if acting as the authorized agent of the beneficiary (*i.e.*, the security holders). As explained by another court in a different context,

> Most investors who purchase mortgages on the secondary market
> lack the capacity to collect periodic payments of interest and

---

[13] Defendants also appear to make an argument that the statutes and regulations relating to GNMA MBS preempt Oregon law on who may nonjudicially foreclose on a mortgage. The Court finds this argument to be without merit.

PAGE 11 – OPINION AND ORDER

> principal, maintain escrow accounts necessary to cover taxes and insurance premiums, *and foreclose when necessary*. They generally contract for these services, often with the original lender. The servicer retains a fee and remits the balance of principal and interest payments to the mortgage holder.

*Poindexter v. Nat'l Mortgage Co.*, 1995 WL 242287, at *1 (emphasis added); *see also Niday*, 353 Or. at 664 (noting that an agent "may have authority to act *on behalf of* the beneficiary if it can demonstrate that it has an agency relationship with the beneficiary and that the agency agreement is sufficiently expansive" (emphasis in original)).

In their motion for partial summary judgment, Plaintiffs specifically asked for a declaration that Defendants may not conduct the nonjudicial foreclosure at issue in this lawsuit. Dkt. 66 at1; Dkt. 67 at 2 ("Second, the Plaintiffs will show conclusively that Defendant Bank2 is not the beneficiary of this loan."). In response, Bank2 did not argue that it was the authorized agent for the beneficiary (*i.e.*, the security holders), let alone specifically identify any evidence in the record showing that it was the agent of the beneficiary with authority to conduct nonjudicial foreclosure proceedings in that capacity. Instead, Defendants argued that Bank2 was the beneficiary, either throughout the process or through the assignment from MERS, which Defendants wrongly identified as "the beneficiary." *See* Dkt. 75 (Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment); Dkt. 108 (Defendants' Objections to Findings and Recommendations, making the same argument that MERS was the agent for Bank2); *see also* Dkt. 102 (Defendants' Motion for Summary Judgment, making the same argument that MERS was the agent for Bank2) (currently under advisement by Judge Papak). But, as discussed previously in this Opinion and Order, Defendants never identified any record evidence showing that either Bank2 or MERS had received express agency authority from the security holders, the actual beneficiary. Further, Courts have "no independent duty 'to scour the record in search of a genuine issue of triable fact,' and may 'rely on the nonmoving party to identify with reasonable

PAGE 12 – OPINION AND ORDER

particularity the evidence that precludes summary judgment.'" *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)). Because Bank2 is not the beneficiary under Oregon law, whether MERS may be an agent for Bank2 is legally irrelevant. The relevant inquiry is whether someone (whether Bank2 or MERS or even someone else) is the authorized agent of the security holders.

Finally, Bank2 could, in theory, simply repurchase Plaintiffs' loan out of the pool. If it did that, Bank2 might then be able to foreclose nonjudicially on Plaintiffs' loan. Indeed, when an Issuer defaults and there are loans in the pool in which homeowners have also defaulted, that is the procedure used by GNMA. *See* Dkt. 99 at 79 (explaining that GNMA repurchases defaulted loans out of pools before foreclosing on them). Again, Defendants present no argument or evidence that they have done that.

## CONCLUSION

The Court ADOPTS Judge Papak's Findings and Recommendations (Dkt. 105) as clarified in this Opinion and Order. Defendants' first and third requests for judicial notice (Dkts. 99 and 109) are GRANTED. Defendants' motion to strike (Dkt. 89) is DENIED. Plaintiffs' motion for partial summary judgment (Dkt. 66) is GRANTED, and the Court DECLARES that Bank2 currently is not the beneficiary of Plaintiffs' loan or Trust Deed under Oregon law and that, based on the arguments and evidence presented by Defendants, Bank2 and Dovenmuehle Mortgage, Inc. have not shown that they currently may lawfully conduct a nonjudicial foreclosure on Plaintiffs' residence at this time.

**IT IS SO ORDERED**.

DATED this 13th day of June, 2016.

/s/ Michael H. Simon  
Michael H. Simon  
United States District Judge