IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CANDACE IRON HAWK and ROBERT VAN
PELT,

          Plaintiffs,

                                    3:15-CV-1374-PK

v.                                     FINDINGS AND
                                     RECOMMENDATION

BANK2 and DOVENMUEHLE MORTGAGE,
INC.,

          Defendants.

PAPAK, Magistrate Judge:

      Plaintiffs Candace Iron Hawk and Robert Van Pelt filed this action against defendants

Bank2 and Dovenmuehle Mortgage, Inc. ("Dovenmuehle"), on July 22, 2015. Plaintiffs amended

their complaint effective October 15, 2015, and again effective December 16, 2015. By and

through their second amended complaint, plaintiffs alleged that Bank2 is a bank specializing in

mortgage lending to Native Americans, specifically in United States Department of Housing and

Page 1 - FINDINGS AND RECOMMENDATION

Urban Development Section 184 Indian Home Loan Guarantee Program loans to Native Americans, and that Dovenmuehle is a subservicer of portfolio mortgages for Bank2. Plaintiffs further alleged that in February 2010, they received a 30-year Section 184 mortgage loan on their Multnomah County residence from Bank2, with Dovenmuehle acting as the subservicer of the loan. Plaintiffs further alleged that after Van Pelt was injured in a car accident, they experienced financial difficulties, with the consequence that they failed to make an approximately $1,100 monthly payment on the loan that was due and owing as of the beginning of June 2013. Plaintiffs further alleged that they subsequently offered to make up the missed payment on at least three occasions, only for their offers to be refused on the grounds that defendants would not accept any partial payment of plaintiffs' arrears until all amounts owed were paid in full, and that defendants improperly refused to negotiate a loan modification with them in violation of the provisions of Section 184 notwithstanding plaintiffs' efforts to initiate such negotiations. Plaintiffs further alleged that in March 2015, Bank2 issued a Trustee's Notice of Sale by and through which it sought to sell plaintiffs' residence via a non-judicial foreclosure. Arising out of the foregoing, plaintiffs alleged defendants' liability for the violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f), by failing to respond as required to plaintiffs' loss mitigation (loan modification) application, for breach of contract under Oregon common law by failing to accept plaintiffs' tendered late payments, for breach of the implied covenant of good faith and fair dealing under Oregon common law by failing to negotiate modification of the mortgage and failing to accept plaintiffs' tendered payments, and for violation of Oregon's Unfair Trade Practices Act ("UTPA"), Or. Rev. Stat. § 646.605 *et seq.*, by failing to negotiate modification of the mortgage, and in addition sought this court's declarations that

neither defendant is a beneficiary of the note securing the mortgage on plaintiffs' residence and

that the defendants may not proceed with a non-judicial foreclosure on plaintiffs' residence, as

well as injunctive relief to enjoin any such non-judicial foreclosure.  Plaintiffs prayed for

monetary damages in the amount of $170,000, emotional distress damages in the amount of

$250,000, award of their fees and costs, and the declarative and injunctive relief discussed above.

This court has federal question jurisdiction over plaintiffs' RESPA claim and declaratory

judgment claim pursuant to 28 U.S.C. § 1331, and may properly exercise supplemental

jurisdiction over plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367; in addition, this court

may properly exercise diversity jurisdiction over plaintiffs' action pursuant to 28 U.S.C. § 1332,

based on the complete diversity of the parties and the amount in controversy.

On October 29, 2015, Judge Simon entered a preliminary injunction enjoining defendants

from foreclosing on plaintiffs' residence during the pendency of these proceedings.

On April 11, 2016, these chambers recommended that the court grant partial summary

judgment in plaintiffs' favor as to their claim for declaratory relief and declare that Bank2 was

not the beneficiary of plaintiffs' home mortgage loan and that in consequence neither defendant

could lawfully proceed with a non-judicial foreclosure on plaintiffs' residence.  On June 13,

2016, Judge Simon adopted these chambers' recommendations with a clarification, and issued the

recommended declaration.

Now before the court are plaintiffs' motion (#144) for attorney fees, by and through which

plaintiffs seek award of their attorney fees and costs reasonably incurred in connection with

successfully litigating their partial summary judgment motion, and plaintiffs' motion (#145) for

imposition of sanctions, by and through which plaintiffs seek imposition of sanctions against

defendants pursuant to Federal Civil Procedure Rule 11(c), Federal Civil Procedure Rule 37(d), and/or Federal Civil Procedure Rule 26(g)(3) for dilatory performance of their discovery obligations and for proffering frivolous arguments in support of their legal positions. I have considered the motions, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, plaintiffs' motion (#144) for attorney fees should be denied with leave to refile after final resolution of all pending claims in this matter, and plaintiffs' motion (#145) for imposition of sanctions should be denied in its entirety.

## LEGAL STANDARDS

### I.      Attorney Fees

Where a federal district court sits in diversity, entitlement to and calculation of award of attorney fees are governed by state law. *See Mangold v. California Public Utilities Com'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The Oregon courts enforce contractual rights to award of attorney fees, and moreover construe contractual provisions expressly providing for a unilateral right to tax a party opponent for attorney fees as providing for bilateral taxation of such fees:

> In any action or suit in which a claim is made based on a contract that specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the party that prevails on the claim shall be entitled to reasonable attorney fees in addition to costs and disbursements, without regard to whether the prevailing party is the party specified in the contract and without regard to whether the prevailing party is a party to the contract.

Or. Rev. Stat. § 20.096(1).

### II.     Sanctions

#### A.      Sanctions Pursuant to Federal Civil Procedure Rule 11(c)

Federal Civil Procedure Rule 11(c)(1) provides that the federal courts may impose

appropriate sanctions on any attorney or party who, "after notice and an opportunity to respond,"

violates any of the provisions of Federal Civil Procedure Rule 11(b). Fed. R. Civ. P. 11(c)(1). A

party moving for sanctions under Federal Civil Procedure Rule 11(c) must serve the motion on

the party against whom sanctions are sought, and then may file the motion with the court any

time following 21 days after service if the allegedly noncompliant filing is not withdrawn or

otherwise appropriately corrected within that period. *See* Fed. R. Civ. P. 11(c)(2). Any sanction

imposed pursuant to Rule 11(c) "must be limited to what suffices to deter repetition of the

conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Attorney

fees may be awarded as a sanction under Rule 11(c) "if imposed on motion and warranted for

effective deterrence," but must be limited to the fees and other expenses "directly resulting from

the violation." *Id.* Rule 11(b) provides as follows:

> By presenting to the court a pleading, written motion, or other paper — whether
> by signing, filing, submitting, or later advocating it — an attorney or
> unrepresented party certifies that to the best of the person's knowledge,
> information, and belief, formed after an inquiry reasonable under the
> circumstances:
>
>> (1)    it is not being presented for any improper purpose, such as to
>>        harass, cause unnecessary delay, or needlessly increase the cost of
>>        litigation;
>>
>> (2)    the claims, defenses, and other legal contentions are warranted by
>>        existing law or by a nonfrivolous argument for extending,
>>        modifying, or reversing existing law or for establishing new law;
>>
>> (3)    the factual contentions have evidentiary support or, if specifically
>>        so identified, will likely have evidentiary support after a reasonable
>>        opportunity for further investigation or discovery; and
>>
>> (4)    the denials of factual contentions are warranted on the evidence or,
>>        if specifically so identified, are reasonably based on belief or a lack
>>        of information.

Fed. R. Civ. P. 11(b).

The courts have discretion to award a party prevailing on a Rule 11(c) motion its reasonable expenses, including attorney fees, incurred in connection with the motion, where such an award would be "warranted." Fed. R. Civ. P. 11(c)(2). The burden of establishing that sanctions are justified is borne by the party moving for imposition of sanctions. *See Tom Growney Equip. v. Shelley Irrigation Dev.*, 834 F.2d 833, 837 (9th Cir. 1987).

### B.    Sanctions Pursuant to Federal Civil Procedure Rule 37(d)

Federal Civil Procedure Rule 37(d) permits the district courts, in their discretion, to impose sanctions (in relevant part) where:

> a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition[.]

Fed. R. Civ. P. 37(d)(1)(A)(i). A failure under Rule 37(d)(1)(A) "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order. . . ." Fed. R. Civ. P. 37(d)(2).

The sanctions that may be imposed pursuant to Rule 37(d) include the following:

(i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   striking pleadings in whole or in part;

(iv)   staying further proceedings until the order is obeyed;

(v)    dismissing the action or proceeding in whole or in part;

Page 6 - FINDINGS AND RECOMMENDATION

(vi)    rendering a default judgment against the disobedient party; or

(vii)    treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(d)(3); *see also* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi). "Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). The burden to establish that noncompliance with the requirements of Rule 37(d) was substantially justified, or that special circumstances would render the imposition of sanctions inappropriate, is on the party facing sanctions. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).

### C.    Sanctions Pursuant to Federal Civil Procedure Rule 26(g)(3)

Federal Civil Procedure Rule 26(g)(1) requires, *inter alia* that "every discovery request, response, or objection" be signed by an attorney of record or, if unrepresented, by the party issuing the request, response, or objection, and that by so signing, the attorney of record or unrepresented party "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" each of the following is true:

(A)    with respect to a disclosure, it is complete and correct as of the time it is made; and

(B)    with respect to a discovery request, response, or objection, it is:

    (i)    consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

    (ii)    not interposed for any improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation; and

(iii)    neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1).  Federal Civil Procedure Rule 26(g)(3) provides as follows:

If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(3).

## FACTUAL BACKGROUND

### I.    The Parties

Plaintiffs Iron Hawk and Van Pelt are husband and wife.  Each is a citizen and resident of Oregon.

Defendant Bank2 is a bank specializing in United States Department of Housing and Urban Development Section 184 Indian Home Loan Guarantee Program loans to Native Americans.  Bank2 is organized under Oklahoma law and is headquartered in Oklahoma. Defendant Dovenmuehle is a subservicer of portfolio loans for Bank2.  Dovenmuehle is organized under Delaware law and headquartered in Illinois.

### II.    Material Factual History of the Parties' Dispute[1]

On or around February 11, 2010, plaintiffs executed a Deed of Trust – a security

---

[1]  Except where otherwise indicated, the following recitation constitutes a construal of the evidentiary record as it currently stands, and is offered only in connection with the motions now before the court, for the purpose of clarifying and contextualizing the legal issues raised by plaintiffs' claims.

instrument memorializing a home mortgage loan in the amount of $158,950 – with plaintiffs named as the "Borrower," Bank2 named as the "Lender," "Fidleity [*sic*] National Title" named as the "Trustee," and Mortgage Electronic Registration Systems, Inc. ("MERS") named as the "beneficiary" of the Deed of Trust. *See* Plaintiffs' Memorandum (#67) in Support of their Motion for Partial Summery [*sic*] Judgment ("Plaintiffs' PSJ Memo"), Exh. 1 ("Deed of Trust"). The loan was secured by plaintiffs' Portland, Oregon, residence. *See id.*

The Deed of Trust contains a provision that in the event of any legal proceeding in connection with which (*inter alia*) Bank2's interest in the plaintiffs' residence or rights under the Deed of Trust were challenged, Bank2 may tax the plaintiffs with certain of its costs, including its incurred attorney fees. *See* Deed of Trust, Uniform Covenants § 14. The parties agree that, pursuant to Or. Rev. Stat. § 20.096(1), this provision must be construed as providing a reciprocal right to award of attorney fees in favor of the party prevailing in connection with any such proceeding. *See* Or. Rev. Stat. § 20.096(1).

On or around March 5, 2010, Bank2 "securitized" the mortgage loan memorialized by the parties Deed of Trust through the Government National Mortgage Association ("GNMA" or "Ginnie Mae"). *See* Declaration of Peter J. Salmon ("Salmon PSJ Decl."), Exh. A at D001381, D001387; *see also* Plaintiffs' PSJ Memo, Exhs. 2 ("Certification and Agreement"), 3 ("Electronic Pool Submission"). It is undisputed that plaintiffs mortgage loan was included in a "pool" of mortgages enumerated by Bank2 as "718520" and assigned "CUSIP number 36202FE69" by GNMA. *See id.* By and through the instrument by which the mortgage at issue was submitted to pool number 718520, Bank2 expressly "transfer[red], assign[ed], set[] over and otherwise convey[ed] to Ginnie Mae all of [Bank2]'s right, title and interest in and to the pooled mortgages

Page 9 - FINDINGS AND RECOMMENDATION

. . . ." Electronic Pool Submission. In addition, the Electronic Pool Submission agreement

expressly specified that the interest conveyed by Bank2 to GNMA included all scheduled and

unscheduled payments due from the borrowers under their loan agreements. *See id.* Moreover,

with respect to the mortgages in pool number 718520, Bank2 certified as follows on March 5,

2010:

> No mortgage in the referenced pool or loan package is now subject to any security
> agreement between the issuer and any creditor, and upon the release (delivery) of
> securities backed by the pool or loan package, only Ginnie Mae will have any
> ownership interest in the pooled mortgages.

Certification and Agreement. It is now the law of this case that the assignment to GNMA was

tacitly contingent, and was never given any legal effect. It is also the law of this case that MERS

was not at any time the beneficiary of the Deed of Trust.

Plaintiffs allege, and defendants have not disputed, that plaintiffs missed a mortgage

payment due and owing in June 2013, that defendants thereafter refused to accept plaintiffs'

various tenders of partial payment of their arrears, and that in March 2015 Bank2 issued a

Trustee's Notice of Sale by and through which it sought to sell plaintiffs' residence via a

non-judicial foreclosure. *See* Second Amended Complaint, ¶¶ 10-29.

On January 16, 2015, MERS executed an Assignment of Deed of Trust by and through

which MERS assigned to Bank2 its purported interest as the beneficiary of the Deed of Trust

memorializing plaintiffs' mortgage loan. *See* Plaintiffs' PSJ Memo, Exh. 8 ("Assignment of Deed

of Trust"). On February 10, 2015, Bank2 in turn appointed Clear Recon Corp.[2] as the successor

trustee in connection with plaintiffs' mortgage loan. *See* Second Amended Complaint, Exh. 2

---

[2] It appears that Clear Recon Corp. shares its mailing address with and may be co-
extensive with defendants' counsel.

("Appointment of Successor Trustee"). It is plaintiffs' position, which defendants have not challenged, that both the Assignment of Deed of Trust and the Appointment of Successor Trustee were recorded in Multnomah County.

It is additionally plaintiffs' position, which defendants likewise do not challenge, that on May 29, 2015, Clear Recon Corp. issued a Notice of Default and Election to Sell plaintiffs' residence via non-judicial foreclosure.

III.    **Material Procedural History**

  A.    **Material Procedural History Relating to the Federal Civil Procedure Rule 30(b)(6) Deposition of Defendant Dovenmuehle**

On October 8, 2015, plaintiffs noticed Federal Civil Procedure Rule 30(b)(6) depositions of Bank2 for October 15, 2016, and of Dovenmuehle for October 19, 2016. On October 12, 2015, plaintiffs' counsel advised defendants that the parties would need to reschedule the noticed depositions, indicating that if he did not hear from the defendants that same day he would re-notice the depositions, but without proposing alternative deposition dates. Counsel for defendants requested that same day that counsel for plaintiffs specify the dates to which the depositions would need to be rescheduled, and counsel for plaintiffs responded the same day that the date for the depositions would depend on the timing of defendants' document production, which had been dilatory. Counsel for defendants inquired that same day whether plaintiffs' counsel preferred to review defendants' document production prior to rescheduling, to which plaintiffs' counsel responded that same day that he planned to conduct both depositions telephonically on October 16, 2015. Defense counsel requested clarification that same day as to whether plaintiffs' counsel intended to reschedule both of the two noticed depositions to October

16, 2015, and indicated uncertainty as to whether defendants would have representatives available for deposition on that date. Before plaintiffs' counsel replied to that request, defense counsel sent plaintiffs' counsel an email message advising that defendants did not agree to Dovenmuehle's deposition on October 16, 2015, and that defendants would require clarification of the matters to be addressed at Dovenmuehle's Rule 30(b)(6) deposition. The following morning, plaintiffs' counsel indicated by email that he would confer with his clients regarding the depositions.

On October 13, 2015, the parties conferred regarding the scope of Dovenmuehle's Rule 30(b)(6) deposition. In the course of that conferral, defendants proposed rescheduling both noticed depositions to be conducted on one day, either October 19, 2015, or October 21, 2015. On October 14, 2015, plaintiffs' counsel advised defense counsel that plaintiffs would reschedule both depositions to October 19, 2015, to which defense counsel replied -- notwithstanding their proposal of the previous day -- that formal deposition notices reciting the new deposition dates would be required if the depositions were to go forward on that date. That same day, plaintiffs requested a hearing before this court to help resolve various discovery-related issues, including the issue of scheduling depositions. Also that same day, the requested conference took place, during the course of which plaintiffs' counsel indicated that he would send new deposition notices reciting the new proposed deposition date.

On October 15, 2015, plaintiffs noticed the Rule 30(b)(6) depositions of both Bank2 and Dovenmuehle, as well as depositions of other witnesses from each defendant, for October 19, 2015. That same day, defense counsel responded with objections to the notices, including the objection that one of the specified Dovenmuehle witnesses (Toni Peinado) was no longer a

Page 12 - FINDINGS AND RECOMMENDATION

Dovenmuehle employee and could not be produced for deposition by the defendants.

On October 16, 2015, plaintiffs' counsel issued an amended Rule 30(b)(6) deposition notice to Dovenmuehle, resetting the Rule 30(b)(6) deposition for October 20, 2015.

The Bank2 depositions scheduled for October 19, 2015, took place via telephone. Also on October 19, 2015, the parties conferred regarding the Dovenmuehle deposition noticed for October 20, 2015, with defense counsel advising that only one of two corporate designees was available on October 20, 2015, and proposing that the deposition be rescheduled to October 21, 2016. Plaintiffs' counsel requested that I order defendants to require the deposition to go forward as noticed on October 20, 2015, but I declined to do so, and instead suggested that plaintiffs' counsel conduct the depositions according to witness availability. Plaintiffs' counsel thereafter advised defense counsel on that same day that he anticipated conducting the Dovenmuehle Rule 30(b)(6) depositions on October 21, 2016, but that he expressly reserved the right to "forego the depositions" in favor of requesting an exclusionary sanction for purposes of a preliminary injunction hearing then scheduled for October 22, 2015. No formal notice of deposition ever issued as to the proposed October 21, 2015, Rule 30(b)(6) deposition of Dovenmuehle.

On October 20, 2015, defense counsel requested via email that plaintiffs confirm whether plaintiffs intended that the October 21, 2015, deposition would take place as scheduled. Plaintiffs did not respond to this request.

On October 21, 2015, an assistant to plaintiffs' counsel contacted defense counsel with a call-in number for a telephonic deposition. Defense counsel responded that, because they had never received confirmation that plaintiff intended the depositions to go forward, the designees had been released to their job duties and were no longer prepared to sit for deposition that day.

Page 13 - FINDINGS AND RECOMMENDATION

Defense counsel offered to reschedule the preliminary injunction hearing to permit the depositions to take place prior to the hearing. Plaintiffs' counsel replied that it had been clear to all parties that the depositions had been intended to go forward on that day, without addressing his express reservation of rights to forego the depositions in favor of requesting an evidentiary sanction, and without addressing his failure to confirm that he nevertheless intended the depositions to go forward.

Later that same day, a court reporter hired by plaintiffs arrived at Dovenmuehle's offices for the stated purpose of transcribing the deposition of Toni Peinado. When Dovenmuehle advised the reporter that Peinado was not available for deposition because she no longer worked for the company, and that no one at Dovenmuehle expected any depositions to take place that day at their offices, the reporter left the premises. Plaintiffs incurred costs in connection with the court reporter's visit to Dovenmuehle's offices.

Also on that same day, plaintiffs filed additional documents in connection with the preliminary injunction hearing scheduled for October 22, 2015. Defendants objected to the late filing, and the court continued the preliminary injunction hearing to October 29, 2015.

On October 22, 2016, defendants offered to make the Dovenmuehle corporate designees available for deposition on October 26, 2015, and also offered to permit plaintiffs the opportunity to file additional briefing and/or to modify the hearing schedule in connection with the pending motion for preliminary injunction, in order to accommodate plaintiffs' asserted need to depose Dovenmuehle corporate designees. That same day, plaintiffs' counsel advised defendants that he would not depose Dovenmuehle's corporate designees on that date, on the asserted ground that he did not want to cause further delay in the preliminary injunction hearing scheduled for October

Page 14 - FINDINGS AND RECOMMENDATION

29, 2015.

On December 23, 2015, plaintiffs once again noticed the Rule 30(b)(6) deposition of Dovenmuehle, this time for January 25, 2016. Plaintiffs' counsel deposed two Dovenmuehle designees on January 25, 2016. At the first of the two depositions, plaintiffs' counsel asked the deponent whether defendants' production of loan servicing notes of October 13 or 14, 2015 (see below) represented all of defendants' loan notes, collection notes, or servicing notes relating to plaintiffs' home mortgage loan, and the deponent responded that the production was complete. It is plaintiffs' asserted position that one of the two deponents lacked any knowledge of key issues in this action.

**B.    Material Procedural History Relating to Defendants' Production of Loan Servicing Notes in Discovery and Reliance thereon in Litigation**

On or around October 1, 2015, plaintiffs issued a set of requests for production of documents to each defendant, including a request for production of "[a]ny loan notes, collection notes, or servicing notes relating to" plaintiffs' home mortgage loan. On or around October 13, 2015, Bank2 produced a set of responsive documents (collectively, "loan servicing notes") to the plaintiffs, representing that the produced documents constituted all responsive documents in Bank2's possession. Dovenmuehle did not separately respond to the request.

Defendants offer the sworn declaration of Peter J. Salmon that, in preparation for the January 25, 2016, depositions of Dovenmuehle's corporate designees (see *supra*), Dovenmuehle searched its records for loan servicing notes, and located no such documents that had not already been produced to plaintiffs in discovery on or around October 13, 2015. It is defendants' position that when a Dovenmuehle corporate designee testified in deposition on January 25, 2016, that the

Page 15 - FINDINGS AND RECOMMENDATION

document production of approximately October 13, 2015, was complete as to loan servicing notes, that testimony was accurate to the best of the deponent's knowledge at the time, and that Dovenmuehle's unsuccessful records search constituted a good-faith basis for the deponent's testimony.

Plaintiffs issued a set of interrogatory requests to each defendant on March 2, 2016, including an interrogatory regarding the names of all Dovenmuehle employees who communicated with the plaintiffs during specified months of 2013. In the course of gathering information responsive to this interrogatory, Dovenmuehle located additional loan servicing notes that had not previously been produced to the plaintiffs. Defendants produced these additional loan servicing notes to plaintiffs on April 6, 2016.

Defendants moved for summary judgment as to all of plaintiffs' claims against them on April 8, 2016. On April 11, 2016, these chambers issued a Findings and Recommendation recommending that the court grant plaintiffs' motion for partial summary judgment as to their declaratory relief claim. Plaintiffs opposed defendants' summary judgment motion on April 29, 2016, and defendants filed a reply memorandum in support of their motion on May 24, 2016.

At or around that same time, Dovenmuehle located still further loan servicing notes that had not previously been produced. These additional loan servicing notes were produced to plaintiffs on May 26, 2016.

Defendants offer the sworn declaration testimony of Peter J. Salmon that the supplemental productions of April 6 and May 26, 2016, did not include any notes reflecting communications in which Dovenmuehle refused to accept a partial payment of plaintiffs' arrears or indicated that tender of partial payment would be rejected if offered, and did not include notes

Page 16 - FINDINGS AND RECOMMENDATION

reflecting the receipt of any payment tendered by plaintiffs and rejected by either defendant.

Plaintiffs assert, without particularity or support, that the supplemental production of April 6, 2016, contained "one entry which buttressed the Plaintiffs['] sworn testimony." It is possible that the entry to which plaintiffs refer is one described with particularity by defendants as reflecting a communication between Iron Hawk and Dovenmuehle on July 19, 2013, in which Iron Hawk indicated that she would pay the full amount due on the mortgage loan by the end of that month.

On May 26, 2016, counsel for defendants offered to meet and confer with plaintiffs' counsel regarding the supplemental productions of April 6 and May 26, 2016.

On June 1, 2016, these chambers granted the parties' stipulated motion to stay further proceedings in connection with defendants' pending summary judgment motion.

On June 6, 2016, counsel for the parties conferred regarding the supplemental productions of April 6 and May 26, 2016. At that time, defense counsel offered to reopen discovery in connection with any issues raised by the supplemental productions, including reopening the deposition of the deponent who testified that the loan servicing notes production of approximately October 13, 2015, had been complete. Defendants also offered the deposition of a Dovenmuehle information technology employee responsible for locating the documents produced on April 6 and May 26, 2016. Plaintiffs' counsel declined to pursue such additional discovery, demanding instead that defendants withdraw their pending summary judgment motion in its entirety.

On June 13, 2016, Judge Simon adopted (with a clarification) these chambers' recommendation that partial summary judgment be granted in plaintiffs' favor as to plaintiffs' declaratory judgment claim, and declared both that Bank2 was not the beneficiary of plaintiffs'

home mortgage loan and that in consequence neither defendant could lawfully proceed with a non-judicial foreclosure on plaintiffs' residence.

Plaintiffs served defendants with their motion (#145) for imposition of sanctions on August 10, 2016.

Also on August 10, 2016, and apparently before receiving service of plaintiffs' sanctions motion, defendants moved the court for leave to withdraw their pending motion for summary judgment to the extent it addressed plaintiffs' declaratory judgment claim, to the extent the arguments adduced in support of summary adjudication of plaintiffs remaining claims depended on premises contradicted by the court's declaration of June 13, 2016, and to the extent the arguments adduced in support of summary adjudication of plaintiffs remaining claims depended in any way on the loan servicing notes produced to plaintiffs in discovery. I granted that motion on the same day that it was filed. Notwithstanding their voluntary withdrawal of supporting arguments premised on the loan servicing notes, it is defendants' position that nothing in either supplemental production of loan servicing notes contradicts any assertion made by defendants in reliance on the loan servicing notes as produced on approximately October 13, 2015.

Plaintiffs filed their sanctions motion on September 1, 2016.

**C.    Material Procedural History Relating to Plaintiffs' Asserted Current Entitlement to Award of Attorney Fees**

On June 13, 2016, Judge Simon adopted (with a clarification) these chambers' recommendation that partial summary judgment be granted in plaintiffs' favor as to plaintiffs' declaratory judgment claim, and declared both that Bank2 was not the beneficiary of plaintiffs' home mortgage loan and that in consequence neither defendant could lawfully proceed with a

non-judicial foreclosure on plaintiffs' residence.

## ANALYSIS

### I. Plaintiffs' Motion (#144) for Attorney Fees

By and through their motion, plaintiffs seek immediate award of their attorney fees reasonably incurred in connection with successfully litigating their partial summary judgment motion as to their declaratory relief claim. Specifically, plaintiffs seek award of $53,520 in attorney fees, and $8,601.90 in costs. Defendants oppose plaintiffs' motion on the ground that it is premature and should not be considered prior to final resolution of all claims pending in this action, and in the alternative seek reduction of plaintiffs' requested award on the ground that the requested award is excessive, and includes fees for legal services not incurred in connection with litigating the declaratory judgment claim.

As noted above, the parties' Deed of Trust contains a provision permitting Bank2 to tax plaintiffs with its attorney fees incurred in connection with litigating a challenge to its interest in plaintiffs' home mortgage or in their residence. As a preliminary matter, I note that the Oregon courts enforce such provisions, and that as a matter of Oregon statutory law such provisions are construed as reciprocal and as providing for award of attorney fees to the prevailing party. *See* Or. Rev. Stat. § 20.096(1). No party hereto disputes that, pursuant to the fees provision of the Deed of Trust as construed under Section 20.096(1), the prevailing party in this action will be entitled to award of attorney fees.

By and through their moving papers, plaintiffs argued that this court had authority, in its discretion, to enter the requested interim award of attorney fees on the theory that plaintiffs were necessarily the prevailing parties. Defendants opposed plaintiffs' motion in part on the theory

that nothing in the Federal Rules of Civil Procedure expressly authorizes interim award of

prevailing-party attorney fees in the absence of entry of final judgment as to any resolved claim,

and by and through their reply memorandum plaintiffs informally requested that this court enter

final judgment pursuant to Federal Civil Procedure Rule 54 as to their declaratory judgment

claim, and thereafter issue the requested interim award of prevailing-party fees in connection

with that judgment.

Assuming *arguendo* that this court either has authority to issue the requested fee award

on an interim basis or could obtain such authority through the expedient of entering partial final

judgment pursuant to Rule 54, considerations of judicial economy strongly mitigate against so

doing. First, determination whether plaintiffs are the prevailing party for purposes of this action

challenging Bank2's interests in their mortgage and residence will require weighing the result

plaintiffs sought in connection with each claim brought in the action against the result actually

obtained, rather than consideration of the outcome of only one of the claims in isolation:

> For the purposes of making an award of attorney fees on a claim, the prevailing
> party is the party who receives a favorable judgment or arbitration award on the
> claim. If more than one claim is made in an action or suit for which an award of
> attorney fees is either authorized or required, the court or arbitrator shall:
>
> (a)    Identify each party that prevails on a claim for which attorney fees
> could be awarded;
>
> (b)    Decide whether to award attorney fees on claims for which the
> court or arbitrator is authorized to award attorney fees, and the
> amount of the award;
>
> (c)    Decide the amount of the award of attorney fees on claims for
> which the court or arbitrator is required to award attorney fees; and
>
> (d)    Enter a judgment that complies with the requirements of ORS
> 18.038 and 18.042.

Or. Rev. Stat. § 20.077(2); *see also Robert Camel Contracting, Inc. v. Krautscheid*, 205 Or. App.

498, 504 (2006) ("[U]nder ORS 20.077, the 'prevailing party' is to be determined on a

'claim-by-claim' basis") (citations omitted); *Beggs v. Hart*, 221 Or. App. 528, 537-538 (2008)

("To determine who is the prevailing party on each claim, a court must weigh 'what was sought

by each party against the result obtained'"), *quoting Lawrence v. Peel*, 45 Or. App. 233, 243

(1980). As such, to grant plaintiffs' motion prior to resolution of all of the claims that must be

considered in determining which party is the prevailing party for purposes of entitlement to

award of fees would be improvident, in that resolution of the remaining claims in defendants'

favor could potentially result in a determination that plaintiffs did not ultimately prevail overall

in this action.

Second, even on the *arguendo* assumption that plaintiffs' success in connection with their

declaratory judgment claim necessitates the conclusion that plaintiffs are the prevailing parties, it

would be improvident to grant plaintiffs' motion at this stage of these proceedings in that it is

unknown at this time whether plaintiffs will prevail in connection with their remaining claims. If

plaintiffs are determined to be the prevailing parties in this action, the parties agree that they will

be entitled to award of their attorney fees incurred in connection with claims litigated to

successful resolution, but not to award of fees incurred in connection with claims as to which

they were ultimately unsuccessful. Because only the declaratory judgment claim has been

litigated to resolution, it is not possible at this stage of these proceedings to determine the

universe of legal services performed to date as to which plaintiffs could be entitled to award of

fees. Moreover, while this obstacle could be avoided by litigating plaintiffs' entitlement to fees

incurred in connection with their declaratory judgment claim at this stage of these proceedings

and then litigating plaintiffs' entitlement to fees incurred in connection with other claims at a later stage of these proceedings, considerations of judicial economy mitigate against such piecemeal litigation of the fees question.

Judicial economy will best be served by litigating the prevailing parties' entitlement to award of fees following resolution of all claims pending in this action. Plaintiffs' motion (#144) for attorney fees should therefore be denied with leave to refile following the conclusion of merits litigation.

## II.    Plaintiffs' Motion (#145) for Imposition of Sanctions

By and through their motion, plaintiffs seek imposition of sanctions on defendants (i) pursuant to Federal Civil Procedure Rule 11(c), in connection with defendants' conduct of April 8, 2016 in moving for summary judgment partially on the basis of its production of loan servicing notes of approximately October 13, 2015, notwithstanding their knowledge in late March and early April 2015 that that production had been incomplete, and in connection with defendants' conduct of May 24, 2016, in filing a reply memorandum in support of that same motion, notwithstanding that same knowledge, (ii) pursuant to Federal Civil Procedure Rule 37(d), in connection with defendants' conduct in purportedly canceling the Dovenmuehle Rule 30(b)(6) depositions and in purportedly offering a corporate designee who lacked knowledge of key litigation issues, and (iii) pursuant to Federal Civil Procedure Rule 26(g), in connection with defendants' conduct in contemporaneously asserting that the loan servicing notes production of approximately October 13, 2015, was complete and in failing to provide (prior to defendants' production of May 26, 2016) separate responses for each defendant to plaintiffs' request for production of documents of October 1, 2015. Defendants' position is that none of the identified

conduct is sanctionable.

### A.    Sanctions Pursuant to Federal Civil Procedure Rule 11(c)

It is plaintiffs' position that in light of defendants' initial incomplete production of loan

servicing notes, could not have had any non-frivolous, good-faith basis either for moving for

summary judgment on April 8, 2016, in partial reliance on the loan servicing notes or for filing a

reply memorandum on May 24, 2016, in support of their summary judgment motion. It is further

plaintiffs' position that defendants could not cure their improper reliance on their incomplete

production of loan servicing notes except by withdrawing their summary judgment motion in its

entirety. It is defendants' position that, in light of the fact that on the same day that they were

served with plaintiffs' sanctions motion they withdrew their arguments in support of summary

judgment to the extent those arguments relied in any degree on any of the loan servicing notes –

including the supplemental productions of loan servicing notes – any impropriety in their reliance

on the loan servicing notes has necessarily been cured.

Plaintiffs' position that defendants' partial reliance on the loan servicing notes requires

complete withdrawal of the summary judgment motion is untenable. Even if this court were to

order defendants to withdraw their summary judgment motion in its entirety, nothing would

prevent them from immediately refiling it in precisely its current form, or indeed from refiling it

after amending it to include arguments relying in whole or in part on the complete, supplemented

production of loan servicing notes. Because the only conduct identified by plaintiffs as

sanctionable under Federal Civil Procedure Rule 11(c) is defendants' reliance in support of

summary judgment on their incomplete production of loan servicing notes, defendants' August

10, 2016, withdrawal of that reliance necessarily cured the identified impropriety. Because (as

noted above) sanctions are available under Rule 11(c) only if the improper filing is noft

withdrawn or appropriately corrected after notice and a 21-day opportunity to respond, *see* Fed.

R. Civ. P. 11(c)(1), (2), plaintiffs are not entitled to Rule 11 sanctions here.

For the foregoing reasons, plaintiffs' motion (#145) for imposition of sanctions should be

denied to the extent premised on Rule 11(c).

## B.    Sanctions Pursuant to Federal Civil Procedure Rule 37(d)

Plaintiffs construe the parties' negotiations and communications of October 12-21, 2015,

as constituting failure to appear for a properly noticed deposition, warranting imposition of

sanctions under Federal Civil Procedure Rule 37(d). Plaintiffs' construction of the events of

October 12-21, 2015, is colorable, and their frustration is understandable. On October 8, 2015,

plaintiffs undisputedly served defendants with proper notice of Dovenmuehle's Rule 30(b)(6)

deposition to take place on October 19, 2015, and although plaintiffs themselves elected on

October 12, 2015, to reschedule the depositions of October 19, 2015, they did so in response to

defendants' dilatory performance of their obligation to produce documents material to those

depositions. Following further negotiations, and at defendants' insistence, on October 15, 2015,

plaintiffs again served defendants with proper notice of depositions to take place on October 19,

2015. Notwithstanding that the Rule 30(b)(6) Dovenmuehle deposition had previously been

noticed for that same date, defendants objected to the notice of October 15, 2015, and on October

16, 2015, plaintiffs once again served defendants with proper notice of the Rule 30(b)(6)

Dovenmuehle deposition, this time for October 20, 2015. Defendants proposed rescheduling the

depositions to October 21, 2015, and plaintiffs objected, seeking this court's assistance in

requiring the depositions to go forward as most recently noticed. Because defendants asserted

Page 24 - FINDINGS AND RECOMMENDATION

that one of the Dovenmuehle designees was unavailable on October 20, 2015, and because the

defendants had been given short notice to make Dovenmuehle's designees available for

deposition, I declined to issue the order plaintiffs requested, and instead suggested that plaintiffs'

counsel work with defense counsel to depose the designees according to their asserted

availability. Plaintiffs in good faith interpreted my suggestion as the court's order that the

depositions go forward on October 21, 2015. Plaintiffs expressly asserted a right to cancel the

depositions, but did not in fact expressly exercise or attempt to exercise that option. Plaintiffs

learned that defendants were unprepared to go forward with the depositions only on the day they

were scheduled to take place.

Although plaintiffs' construction of the foredescribed events is colorable, I do not find

that defendants' conduct warrants the imposition of sanctions. First, I note that the courts of the

Ninth Circuit strictly construe the language of Rule 37(d), *see Estrada v. Rowland*, 69 F.3d 405,

406 (9th Cir. 1995), and Rule 37(d)(1)(A)(i) authorizes imposition of sanctions only for a party's

failure to appear at a deposition after being served with proper notice thereof, and plaintiffs never

served Dovenmuehle with formal notice of the proposed October 21, 2015, deposition date. In

consequence, sanctions are not available to plaintiffs under Rule 37(d). *See, e.g., Honey v.*

*Dignity Health*, Case No. 2:12-cv-00416-LRH-GWF, 2013 U.S. Dist. LEXIS 180209, *3-5 (D.

Nev. Dec. 18, 2013) (finding imposition of sanctions unwarranted under Rule 37(d) on similar

facts).

Second, and perhaps more critically, defendants were justified in concluding, in the

absence of any formal notice of the October 21, 2015, deposition date and in light of plaintiffs'

counsel's express reservation of the right to "forego" the depositions of October 21, 2015, in lieu

Page 25 - FINDINGS AND RECOMMENDATION

of requesting an evidentiary sanction and subsequent failure to confirm upon request that he
intended the depositions to go forward, that the depositions had been once again postponed or
canceled. It would be inappropriate to impose sanctions under Rule 37(d) in connection with a
party's failure to appear for deposition where it was objectively ambiguous whether any party
intended the deposition to go forward.

Additionally or in the alternative, plaintiffs argue that Rule 37(d) sanctions are warranted
in light of defendants purported failure to produce a Dovenmuehle designee with knowledge of
the subject matter to be examined at one of the two Dovenmuehle Rule 30(b)(6) depositions. As
a threshold matter, I cannot recommend imposition of sanctions in connection with that
purported failure because plaintiffs have not described the failure with sufficient particularity or
offered sufficient supporting evidence to permit the conclusion that the designee was in fact
unprepared to provide useful responses. Moreover, the courts of the Ninth Circuit have flatly
held that where a deponent appears for deposition but refuses to answer any questions
whatsoever, that refusal does not constitute a failure to appear for purposes of Rule
37(d)(1)(A)(i),with the result that sanctions are not available under Rule 37(d). *See Estrada*, 69
F.3d at 406. Similarly, here, sanctions are not warranted under Rule 37(d) where a deponent may
have been inadequately prepared to provide useful responses to some questions.

For the foregoing reasons, plaintiffs' motion (#145) for imposition of sanctions should be
denied to the extent premised on Rule 37(d).

C.      **Sanctions Pursuant to Federal Civil Procedure Rule 26(g)(3)**

It is plaintiffs' position that defendants lacked substantial justification for certifying on or
around October 13, 2015, that its production of loan servicing notes was at that time complete,

Page 26 - FINDINGS AND RECOMMENDATION

on the ground that the production ultimately proved to have been incomplete. It is further plaintiffs' position that defendants did not supplement their production of loan servicing notes sufficiently soon after determining that additional, unproduced loan servicing notes were in its possession. It is further plaintiffs' position that defendants' inaccurate certification of approximately October 13, 2015, and purported delay in supplementing their production of loan servicing notes warrant imposition of sanctions under Federal Civil Procedure Rule 26(g)(3). I disagree.

Defendants have provided sworn testimony tending to establish that defendants contemporaneously believed in good faith and on good grounds that the production of approximately October 13, 2015, was complete, and have additionally provided sworn testimony tending to establish that defendants promptly supplemented their production of loan servicing notes after determining that unproduced loan servicing notes existed. In the absence of evidence to the contrary, grounds do not exist for imposing Rule 26(g) sanctions in connection with the certification of approximately October 13, 2015, or with defendants' supplemental productions of loan servicing notes.

Plaintiffs additionally argue that this court has authority, apparently under Federal Civil Procedure Rule 26(e), to impose sanctions against defendants in connection with defendants' failure to provide separate production of documents responsive to plaintiffs' discovery requests of October 1, 2015, from each of the two defendants. Plaintiffs do not argue or suggest that they were prejudiced in any way by defendants' failure to produce responsive documents in two duplicative batches, and do not cite to authority for the proposition that such failure could be sanctioned under Rule 26(e) or any other provision of the Federal Rules of Civil Procedure. In

Page 27 - FINDINGS AND RECOMMENDATION

the absence of any compelling reason to sanction defendants for not providing duplicative

discovery responses, I decline to recommend that plaintiffs' motion be granted on the ground of

such failure.

For the foregoing reasons, plaintiffs' motion (#145) for imposition of sanctions should be

denied to the extent premised on Rule 26(g).

## CONCLUSION

For the reasons set forth above, plaintiffs' motion (#144) for attorney fees should be

denied with leave to refile after final resolution of all pending claims, and plaintiffs' motion

(#145) for imposition of sanctions should be denied in its entirety.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any,

are due fourteen (14) days from service of the Findings and Recommendation.  If no objections

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.

Dated this 19th day of October, 2016.

Honorable Paul Papak
United States Magistrate Judge

Page 28 - FINDINGS AND RECOMMENDATION